IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER AYALA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11 C 4019 |
| | ) | |
| ADVOCATE GOOD SAMARITAN HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Advocate Good Samaritan Hospital's (Advocate) motion to dismiss Counts VII-IX. For the reasons stated below, the partial motion to dismiss is granted.

## BACKGROUND

Plaintiffs Javier Ayala (Ayala) and Juan Chavez (Chavez) allege that they are both of Hispanic decent. Ayala and Chavez were allegedly hired to work for Advocate as Public Safety Officers. Tim Boyle (Boyle), who is allegedly not of Hispanic descent, was allegedly the direct supervisor of Ayala and Chavez. Chavez

1

and Ayala contend that they were subjected to harassment and discrimination based on their Hispanic ancestry. Plaintiffs allege that Boyle asked them to view a video on his computer at work that depicted Hispanic laborers in an insulting manner. Boyle also allegedly frequently used the term "beaner" to refer to Hispanics and made other demeaning comments about Hispanics. (Compl. Par. 21, 27). Boyle also allegedly made remarks that indicated a prejudice against Hispanics. For example, Boyle allegedly stated: "What do they call beaners in Arizona? Target practice!" (Compl. Par. 37). Ernest Vallardes (Vallardes) was allegedly the Public Safety Manager and was Boyle's direct supervisor. Vallardes allegedly constantly referred to Ayala and Chavez as the "burrito brothers." (Compl. Par. 30). In addition, according to Plaintiffs, Hispanic workers, such as Ayala and Chavez, were treated less favorably than non-Hispanic workers.

On August 21, 2009, Boyle allegedly found a small bag of marijuana in the back of Squad Car Number 15, which was allegedly shared by all the Public Safety Officers. Boyle allegedly then gave the marijuana to Vallardes. The next day, Ayala was allegedly called to Vallardes' office before his shift and was told he had to submit to a drug test. Vallardes allegedly stated that anyone who worked in the 48 hours preceding the discovery of the marijuana was required to submit to drug testing. Ayala allegedly refused to agree to drug testing, contending that he had not

worked during the 48 hour period, and Ayala allegedly stated that he believed that he was being harassed. Vallardes allegedly then indicated that if Ayala refused to submit to testing, he would be fired.

Chavez allegedly subsequently entered Vallardes' office and was also told to submit to drug testing. Chavez allegedly likewise refused, contending that he did not work during the 48 hour period. Vallardes then allegedly screamed at Chavez, telling him that, if he did not agree to testing, he would be fired. Plaintiffs contend that non-Hispanic employees, such as Nate Penley, Larry Jablecki, and Russell Worthy, who worked during the 48 hour period, were not asked to submit to drug testing. Plaintiffs were allegedly fired because of their refusal to submit to drug testing and were allegedly replaced with two non-Hispanic employees. Plaintiffs include in their complaint claims alleging that they were subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Counts I-II), claims alleging that they were subjected to a hostile work environment in violation of 42 U.S.C. § 1981 (Section 1981) (Counts III-IV), Section 1981 retaliation claims (Counts V-VI), claims alleging harassment and termination based on ancestry in violation of the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq.* (Counts VII-VIII), and intentional infliction of emotional distress (IIED) claims (Count IX). Advocate now moves to dismiss Counts VII-IX.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

Advocate argues that the IHRA claims (Counts VII-VIII) are barred because Plaintiffs have failed to comply with IHRA requirements and because the claims are untimely. Advocate also contends that the IIED claims (Count IX) are pre-empted by the IHRA.

I. IHRA Claims

Advocate argues that Plaintiffs cannot bring IHRA claims in this action because they are untimely and because Plaintiffs opted to pursue claims before the Illinois Human Rights Commission (IHRC). The IHRA provides in 775 ILCS 5/7A-102(D)(2) the following:

> Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

*Id*. The IHRA provides in 775 ILCS 5/7A-102(D)(3) the following:

> If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

*Id.*

A. Ayala's IHRC Notices

The record reflects that Ayala filed wrongful discharge and harassment claims with the IHRC. As to the wrongful discharge claims, the record reflects that on October 21, 2010, the Director of the Illinois Department of Human Rights (Director) notified Ayala, consistent with 775 ILCS 5/7A-102(D)(3), that the Director had found a lack of substantial evidence on the wrongful discharge claim and that Ayala had the right to request review of the dismissal of this claim by the IHRC by November 29, 2010, or commence a civil action in the appropriate state circuit court within ninety days after receipt of the notice. The record reflects that Ayala failed to either seek a review by the IHRC or file an action in state court within the 90-day IHRA limitations period.

As to the harassment claim, the record reflects that on October 21, 2010, the Director sent to Ayala a notice indicating a finding of substantial evidence, consistent with 775 ILCS 5/7A-102(D)(2), and informing Ayala that he had the right to request to proceed on the claim before the IHRC within 14 days of receipt of the notice or to commence a civil action in state court within 90 days. The record also reflects that Ayala chose to proceed before the IHRC and that the proceedings are currently stayed. (D. Ex. F, G). Thus, the record reflects that Ayala's wrongful discharge claim was not filed within the IHRA limitations period. Further, since

Ayala chose to pursue the harassment claim with the IHRC, rather than bringing a civil action, and such proceedings are still pending, he is precluded from proceeding with a IHRC harassment claim in this action.

### B. Chavez IHRC Notices

Chavez also filed wrongful discharge and harassment claims with the IHRC. As to the wrongful discharge claims, the record reflects that on October 18, 2010, the Director notified Chavez, consistent with 775 ILCS 5/7A-102(D)(3), that the Director had found a lack of substantial evidence on the wrongful discharge claim and that Chavez had the right to request review of the dismissal of this claim by November 22, 1010, or commence a civil action in the appropriate state circuit court within ninety days after receipt of the notice. The record reflects that Chavez failed to either seek a review by the IHRC or file an action in state court within the 90-day IHRA limitations period.

As to the harassment claim, the record reflects that on October 22, 2010, the Director sent to Chavez a notice indicating a finding of substantial evidence, consistent with 775 ILCS 5/7A-102(D)(2), and informing Chavez that he had the right to request to proceed on the claim before the IHRC within 14 days of receipt of the notice or to commence a civil action in state court within 90 days. The record

also reflects that Chavez chose to proceed before the IHRC and that the proceedings are currently stayed. (D Ex. C, D). Thus, the record reflects that Chavez's wrongful discharge claim was not filed within the IHRA limitations period. Further, since Chavez chose to pursue the harassment claim with the IHRC, rather than bringing a civil action, and such proceedings are still pending, he is precluded from proceeding with a IHRC harassment claim in this action.

### C. Supplemental Jurisdiction and Removal

Plaintiffs argue that this court has supplemental jurisdiction over the IHRA claims, regardless of whether they complied with the requirements of the IHRA, and that such claims can be removed to federal court. (Ans. Mot. 4). Even if this court could exercise supplemental jurisdiction over the IHRA claims, such state law claims would still be governed by state law. *See Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)(indicating that the substantive state law governs supplemental state law claims before the federal court); *Fishering v. City of Chicago*, 2008 WL 834436, at *2 (N.D. Ill. 2008)(stating that "Illinois state law governs the substantive aspects of the defamation claim" over which the court had supplemental jurisdiction). Thus, the IHRA procedural requirements would still be applicable to the claims in this case and Plaintiffs' failure to follow the procedural requirements would bar the

claims presented in this action. Plaintiffs fail to cite a single case in which a federal court exercised supplemental jurisdiction over IHRA claims and allowed the claims to proceed even though they were not prosecuted before the IHRC according to the IHRC rules. (Ans. Mot. 3-5).

Plaintiffs also argue that the IHRC rules do not "prohibit removal from the [IHRC] to Federal Court. . . ." (Ans. Mot. 4). While civil actions can be removed from state court pursuant to 28 U.S.C. § 1441, Plaintiffs fail to cite any federal removal statute or case law permitting claims before the IHRC to be removed to federal court. Therefore, Defendants' motion to dismiss the IHRA claims is granted.

II. IIED Claims

Advocate argues that the IIED claims in this action are pre-empted by the IHRA. Claims are pre-empted by the IHRA if such claims "seek[] redress for a 'civil rights violation' within the meaning of [that] statute." *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000)(quoting *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1276 (Ill. 1994)). In assessing whether a claim is independent of the IHRA, the court must determine whether "the conduct would be actionable even aside from its character as a civil rights violation. . . ." *Id.* (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)).

9

In the instant action, the allegations that support the IIED claim are allegations concerning harassment of Plaintiffs based upon their Hispanic ancestry. Plaintiffs argue that the harassment caused them emotional distress. In Count IX of the complaint, Plaintiffs allege only vaguely that "Defendant's severe and outrageous acts, insults, ancestry-related comments, hostile work environment, and ultimate termination of Plaintiffs amounted to extreme and outrageous conduct." (Compl. Par. 100). The insults, comments, hostile work environment, and termination are all alleged as part of the ancestry harassment and discrimination claims. (Compl. Par. 98, 100). Plaintiffs fail to allege additional facts that would support an IIED claim separate and apart from the ancestry harassment and discrimination claims. (Compl. Par. 98-105). Plaintiffs argue that there is conduct that can support their IIED claim such as the allegations of the "incredibly abrasive, physically intimidating, and verbally threatening nature of Plaintiffs' manager Vallardes' approach" in terminating Plaintiffs' employment. (Ans. Mot. 7). However, Plaintiffs indicate in the complaint that such alleged conduct was part of the alleged harassment against them because of their ancestry and Plaintiffs reference such conduct to show that Plaintiffs were subjected to a hostile work environment because of their ancestry. The IIED claim is nothing more than a claim alleging emotional distress due to ancestry harassment and discrimination, which are both prohibited under the IHRA.

775 ILCS 5/1-102(A); *Bannon v. University of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007). Thus, the IIED claims are inextricably linked to protections provided in the IHRA and are pre-empted by the IHRA. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006)(indicating that "a claim of intentional infliction of emotional distress was preempted by the IHRA when 'the core of [the plaintiff's] theory' was that the plaintiff was a victim of racial harassment")(internal quotations omitted)(quoting *Smith v. Chicago Sch. Reform Bd.,* 165 F.3d 1142, 1151 (7th Cir. 1999)). Therefore, Advocate's motion to dismiss the IIED claims (Count IX) is granted.

## CONCLUSION

Based on the foregoing analysis, Advocate's motion to dismiss Counts VII-IX is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 29, 2011